IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA *ex*
*rel.* CHARLES CARROLL,

               Petitioner,

       v.

JODY HATHAWAY, Warden, Shawnee
Correctional Center,

               Respondent.

Case No. 10 C 3862

Hon. Harry D. Leinenweber

MEMORANDUM OPINION AND ORDER

Before this court is Charles Carroll's Petition for a Writ of
Habeas Corpus.  For the following reasons, this Court issues a Writ
striking the period of supervised release from Petitioner's
sentence, but declines to issue a Writ on all other grounds.

I.  BACKGROUND

In December 1999, Petitioner Charles Carroll (hereinafter, the
"Petitioner") was convicted after a bench trial of six counts of
aggravated criminal sexual assault against his 15-year-old
stepdaughter.  The judge found that he entered her bedroom with a
knife, held the knife to her throat and threatened to molest her.
The victim cut her finger trying to push the knife away.  Carroll
then commanded her to stab him with the knife, which she did.  He
then took her upstairs, cut off her clothing with a different
knife, and committed the three acts of sexual penetration for which

he was convicted.  The victim testified at trial, as did several witnesses to whom she immediately reported the rape.  Carroll disputes none of the facts except the rape.

At trial, the court admitted evidence that sperm was found inside the victim, although it was not scientifically linked to Petitioner.  The defense was not permitted to inquire as to alternate sources for the sperm evidence.  After trial, however, the court granted a defense motion to strike the evidence.  Even so, the judge reaffirmed her conclusion that Petitioner was guilty.

The victim testified at sentencing about the attack's impact on her life, including her continuing digestive problems.  The judge credited her statements, pointing out that she had vomited during her testimony and that such a violent reaction said something significant about the impact on the victim.  Petitioner was sentenced to concurrent terms of eight years on Counts I, III, IV, and V; as well as a concurrent term of 14 years on Count II and a consecutive term of 14 years on Count VI.  In total, Petitioner was sentenced to 28 years of imprisonment.

Petitioner appealed to the Illinois Appellate Court on three grounds.  First, he alleged that admitting the sperm evidence was error; the Appellate Court agreed but noted that it was harmless at most because the judge had excluded the evidence post-trial.  Second, Petitioner argued that the judge had taken improper judicial notice.  The defense had asked the judge to take judicial

notice of the relatively little blood in the upstairs bedroom; she refused, noting that in her experience overweight individuals (like Carroll had been) sometimes bled less than one might expect. The appeals court agreed that this observation was improper, but found it harmless in light of the considerable evidence against Petitioner. Third, Petitioner argued that the judge made contradictory findings at sentencing, which the Appellate Court flatly rejected in affirming his conviction. The Illinois Supreme Court subsequently denied a Petition for Leave to Appeal (the "PLA") on June 29, 2001.

On January 25, 2002, Petitioner filed a state post-conviction petition alleging nine claims including: ineffectiveness of trial counsel, ineffectiveness of appellate counsel, judicial wrongdoing, and a failure to prove that he used a weapon beyond a reasonable doubt. He was appointed counsel, who filed an amended petition. Both petitions were denied on May 7, 2004.

Again with counsel, Petitioner appealed, arguing that certain witness testimony should not have been barred at trial and that his prior counsel was ineffective for not challenging three of his convictions under the one-act, one-crime rule. (*See People v. King*, 66 Ill.2d 551 (1977).) The state conceded the one-act, one-crime violation, but sought resentencing because Petitioner's sentences should have been consecutive. The Appellate Court affirmed in part and reversed in part on March 29, 2006. It

vacated all of the sentences, and remanded the case for resentencing on Counts I – III. Petitioner filed a PLA to the Illinois Supreme Court re-arguing his ineffective assistance claims and claiming, *inter alia,* that the state was estopped from seeking consecutive sentences. The PLA was denied on September 27, 2006. On remand, Petitioner was sentenced to eight years on Count I, twelve years on Count II, and six years on Count III, for twenty-six (26) total years of consecutive imprisonment. He appealed, but his appointed counsel filed a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967), citing a lack of meritorious issues for appeal. Petitioner responded by letter, arguing that he needed counsel to look into several issues, including that the Department of Corrections had added an unauthorized term of mandatory supervised release ("MSR") to his sentence. He cited no cases, but sought counsel to help develop those claims. The Appellate Court granted *the Anders* motion and affirmed the sentence on November 20, 2008. Petitioner sought rehearing, developing his MSR argument with citations challenging the sentence's constitutionality. That petition was denied. He then filed a PLA on the same claims, which was denied on May 28, 2009.

On June 21, 2010, the Petitioner filed this petition.

## II.  LEGAL STANDARD

28 U.S.C. § 2254 limits the ability of District Courts to grant *habeas* relief to state prisoners. Such prisoners cannot

present a claim in federal court until they exhaust their state court remedies and subject their claims to a complete round of state appeals.  *See Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008).  If a prisoner exhausts his remedies without subjecting each claim a complete round of appeals, he has procedurally defaulted that claim. *Id.*  To fairly present a claim to the state courts, a prisoner should provide both the relevant facts and law. *Id*.

A prisoner may present a defaulted claim if he shows: (a) adequate cause for the default and prejudice from losing review on the merits, or (b) that a fundamental miscarriage of justice will result from the lack of review.  *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).  Cause requires an objective factor (external to the defense) which prevented a petitioner from presenting the claim earlier; prejudice means that error "so infected the entire trial that the resulting conviction violates due process." *Id.*

If a state court adjudicated a claim on the merits, *habeas* is only available if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based upon "an unreasonable determination of the facts in light of the evidence presented [to that court]." 28 U.S.C. § 2254(d).  If the judgment clearly rested on state procedural grounds, however, the claim is not subject to federal collateral review.  *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010).

Rule 2(c) of the Rules Governing Section 2254 Cases ("Rule 2(c)") requires a *habeas* petition to list the relief requested, the grounds for that relief, and facts to support each ground. A petitioner need not recite every possible supporting fact, but notice pleading will not suffice. *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002). Petitioner argues that the *habeas* packet he obtained from the prison law library did not inform him about Rule 2(c), and that he should not be held to it. However, the form petition (which he attached as an exhibit) repeatedly emphasizes that a petitioner must provide supporting facts. *See*, *e.g.,* Pet'r's Reply Br. Ex. A, at 2 ("The section in which you state the grounds for relief is clearly the heart of your petition. You want to be as precise and detailed as possible."); *Id.* at 10 ("Summarize _briefly_ the _facts_ supporting each ground.") (emphasis in original).

### III.  **DISCUSSION**

#### A.  **Claim 1**

Petitioner argues that the state trial court erred in taking judicial notice "of facts that are not of common knowledge, by doing so it relieved the burden of proof from the State." Pet. 3. Respondent argues that this claim should be dismissed under Rule 2(c). The Court agrees that Claim 1 is insufficiently plead.

Even incorporating the underlying facts from Petitioner's prior litigation, however, the claim is meritless. As noted above,

the Appellate Court acknowledged that the trial judge erred to the extent that she considered any relationship between a person's weight and their rate of blood loss. However, that court also found the error harmless, as there was "no reasonable probability the trier of fact would have acquitted the defendant had the evidence been excluded." Resp't Ex. A, at 9-10.

If a state court concludes that an error was harmless, federal courts may only review that conclusion for a reasonable application of the *Chapman* harmless error standard. *Johnson v. Acevedo*, 572 F.3d 398, 404 (7th Cir. 2009)(citing *Chapman v. Cal.*, 386 U.S. 18 (1967)). A reasonable application of *Chapman* ends the federal case. *Id.* Respondent concedes that the state court's analysis does not track *Chapman*; this Court is not so sure. *See Burr v. Pollard*, 546 F.3d 828, 831 (7th Cir. 2008). In any event, the error was harmless under the federal standard. *See Johnson,* 572 F.3d at 404 (if the state court did not follow *Chapman*, the federal court applies *Brecht v. Abrahamson*, 507 U.S. 619 (1993)). Under *Brecht*, the court must determine whether an error "had substantial and injurious effect or influence in determining the [judge's] verdict." *Brecht*, 507 U.S. 619, 623 (1993).

It seems clear that the improper judicial notice here had no such influence. It is unclear how much the judge relied on that "notice," given that she only raised it in rejecting Defendant's motion. In any event, as the Appellate Court noted, the trial

judge specifically credited the victim's testimony and cited corroborating evidence, including the clothes that were cut from her body and her contemporaneous outreach to neighbors, police, and doctors.  Resp't Ex. A, at 5.  Furthermore, as that court noted, Petitioner's claim that he walked away at the height of the attack is inherently implausible.  Resp't Ex. T, at 343.  This Court thus cannot conclude that the improper taking of judicial notice substantially injured Petitioner and meaningfully influenced the judge's finding of guilt.

Petitioner also objects in his reply that the judge allowed the victim's physical illness on the stand to improperly influence her decision.  *See* Pet'r Reply Br. 5.  However, that claim is procedurally defaulted, in that Petitioner raised the issue in his first PLA, and again in his *pro se* post-conviction petition, but nowhere else – not even in his other *pro se* briefs.  *See* Resp't Ex. K, Q.

Even if the claim were not defaulted, it lacks merit.  The trial court only discussed the victim's illness in the context of the victim's impact statement at sentencing, not in finding Petitioner guilty. See Resp't Ex. T, at 399-400, 404. Because the court only relied on the victim's illness at sentencing, and Petitioner was subsequently re-sentenced, he cannot identify any harm that he suffered from this allegedly unconstitutional

consideration of the victim's illness.  Accordingly, Petitioner's
Claim 1 is denied.

## B.  Claim 2

In Claim 2, Petitioner seems to challenge the trial court's
admission of the sperm evidence.  Once again, the Court agrees with
Respondent that the petition lacks sufficient factual allegations
and is subject to dismissal under Rule 2(c).  Even were that not
so, however, Claim 2 is meritless.  As noted above, the trial court
struck that evidence in its post-trial ruling, but reaffirmed its
finding of Petitioner's guilt even without that evidence.

In a bench trial, the judge is presumed to base her findings
only on the competent evidence in the record.  *United States v.
Stanley,* 411 F.2d 514, 516 (7th Cir. 1969).  Here, a presumption is
not necessary, as the judge specifically concluded that even absent
the sperm evidence the conviction stands.  As the Appellate Court
noted, there is ample supporting evidence in the record for the
conviction, and thus even if the sperm evidence had been relied on
to some degree it was "at worst harmless error."  Resp't Ex. A, at
4.  The Appellate Court found "no reasonable probability" that
Petitioner would have been acquitted if the sperm evidence had
never been introduced.  *Id.*  Even if, as discussed above, this is
not a proper *Chapman* inquiry, this Court does not find that the
evidence had a "substantial and injurious effect or influence in

determining the [judge's] verdict." *Brecht*, 507 U.S. at 623.
Accordingly, *habeas* relief on Claim 2 is denied.

### C. Claim 3

Petitioner argues that the trial court showed bias and prejudice by altering transcripts, ostensibly to conceal the errors in his initial sentence. He admits in his reply, however, that this argument is moot because he has been re-sentenced. Pet'r Reply Br. 3. Accordingly, *habeas* relief on Claim 3 is denied.

### D. Claim 4

Petitioner argues that his trial counsel was unconstitutionally ineffective in three ways: (1) by failing to investigate and/or call witnesses who might have affected the trial outcome; (2) for not requesting a mistrial when the victim vomited during her testimony; and (3) for not objecting "to evidence and statements that were inadmissible." Pet. 3-4. Respondent contends that these claims are procedurally defaulted. The claim of ineffective assistance of counsel is but one claim, no matter how many failings are alleged to support it. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). However, because a petitioner must present state courts with both the facts and the law supporting his claims, he can default individual bases for an ineffective assistance claim. *Id.*

Petitioner raised ineffective assistance claims against his trial counsel in both his original and amended post-conviction

petitions.  The reviewing trial court concluded that trial counsel "certainly did not in any way violate the *Strickland* standard." R. 539.  The claims were not pressed on appeal, *see* Resp't Ex. I at 13, 18-20, 25, though the subsequent PLA did allege that various lawyers were ineffective for failing to spot the one-act, one-crime problem sooner.  Resp't Ex. K, at 5-6.

Petitioner appears to concede that the grounds pressed here are defaulted, but argues that he should be allowed to pursue them because they were omitted on appeal over his objection.  He then left them out of his *pro se* PLA, he claims, because he believed that the Illinois Supreme Court Rules limited his PLA to issues raised on appeal.

However, upon reading that PLA, it is clear that he did not limit his arguments to issues raised on appeal.  He cannot now selectively invoke the rules to revive his abandoned claims. (Furthermore, his appellate counsel suggested that Petitioner raise his *Apprendi* claim for the first time in a PLA, further undermining his reliance argument. *See* Resp't Ex. F at Ex. B thereto.)  His explanation lacks credibility and cannot satisfy the cause-and-prejudice standard.  The Court will not, therefore, afford him *habeas* relief on his defaulted claims of ineffective trial counsel.

### E.  Claim 5

Petitioner also raises Sixth Amendment claims against his counsel on direct appeal, arguing that counsel "failed to raise

issues that are reversible error, or would help to support arguments raised. These issues were requested to be included in the appeal by the petitioner." Pet. 4. Once again, this Court agrees with Respondent that these assertions cannot satisfy Rule 2(c). Even in Petitioner's prior filings in this record, his vague objections to appellate counsel's performance are largely unsupported by details or facts. *See, e.g.,* Resp't Ex. F, at 3-4, grounds (b)-(d).

Even if the allegations complied with Rule 2(c), however, the bases for the ineffective assistance claim alleged here have been defaulted. As noted above, a petitioner must avoid defaulting not only his general claim of ineffective assistance, but also the alleged failings supporting such a claim. *Stevens,* 489 F.3d at 894.

Only two bases for Petitioner's alleged ineffective assistance claim were adequately presented to the state courts in his post-conviction petitions: that appellate counsel erred by failing to argue that his trial counsel was ineffective, and that appellate counsel failed to identify a possible *Apprendi* issue.

On appeal from the denial of that petition, Petitioner's counsel argued that: the exclusion of certain witness testimony was reversible error; Petitioner's six convictions for three acts of sexual penetration violated the one-act, one-crime rule; and counsel at the appellate and post-conviction levels were

ineffective for failing to spot those issues. The state objected that the one-act, one-crime issue was defaulted, but confessed error on its substance. The Appellate Court concluded that the claims relating to witness testimony were without merit, but that three of Petitioner's convictions had to be vacated and the remaining three remanded for consecutive sentences. It therefore vacated all sentences, remanded for re-sentencing on Counts I - III, and declined to resolve Petitioner's ineffective assistance claim relating to sentencing.

Petitioner's subsequent PLA contains some discussion of his appellate counsel's failings, but the only clear complaint is that the attorney should have spotted the issue of Petitioner's void sentence. *See* Resp't Ex. K, at 5-6. As noted above, Petitioner's argument that he only defaulted his other claims in reliance on the Illinois Supreme Court rules is insupportable on this record.

Thus, the only ground for an ineffective assistance claim that Petitioner has even arguably not defaulted is the claim that his appellate counsel should have spotted his void sentence. However, as the Illinois courts have already corrected the sentence, Petitioner cannot show any prejudice from that failing. Accordingly, even if this Court did not dismiss this claim for flagrant violation of Rule 2(c), it would deny *habeas* relief on the merits.

## F. Claim 6

Petitioner next objects that the Appellate Court failed to consider the cumulative effect of the trial court's errors when it upheld his conviction. Individually harmless errors may cumulatively "alter the course of a trial so as to violate" a petitioner's due process rights. *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). To make out a cumulative error claim, a petitioner must show: (1) at least two trial errors, which (2) considered together with the complete record, so infected the proceedings as to make the trial fundamentally unfair. *Id.* Petitioner must show that but for those errors, the trial outcome probably would have been different. *United States v. Benabe*, 436 Fed. App'x 639, 659 (7th Cir. 2011).

The Appellate Court acknowledged two trial errors: the improper discussion of a relationship between weight and tendency to bleed, and the admission of the sperm evidence. (The court actually *alternatively* held the sperm evidence was a harmless error, after concluding that the conviction did not depend upon the evidence at all once the judge struck it. Resp't Ex. A, at 4-5.) It nonetheless affirmed the conviction as more than amply supported by proper evidence. (The void sentence was also an error, but not one which would have affected the *trial* outcome.)

The Appellate Court did not specifically conduct a cumulative error analysis, but repeatedly emphasized the strength of the

remaining evidence in the case, including: the victim's detailed account of the assault, which the trial court found credible; her knife wound; the blood at the scene; the victim's sliced-open clothing from the night of the attack; and the victim's "consistent, repeated, and contemporaneous outcries to neighbors, police, and medical personnel." *Id*. at 5, 10. This evidence, it found, "more than supports" the conviction. *Id.* at 5.

This Court agrees. Even counting the sperm evidence as an error, the cumulative errors were harmless in light of the factual findings above, which are not challenged here. *Cf.* 28 U.S.C. § 2254(e). Petitioner's conviction is well supported, and he cannot make the necessary showing that his trial was fundamentally unfair or that the outcome probably would have been different but for the trial court's errors. Accordingly, relief on Claim 6 is denied.

### G. Claim 7

Petitioner argues that he was improperly convicted on Counts 1, 2 and 3 because an unspecified element of those offenses was never proved. This allegation, too, is insufficient under Rule 2(c).

Even assuming, as Respondent does, that Petitioner means to argue again that he was not proved to have used or displayed a weapon during the attack, that claim is both defaulted and meritless. The claim was defaulted when Petitioner failed to

present it in either the subsequent appeal or PLA. The claim is meritless because the victim testified that there was a knife near the bed throughout the attack and that Petitioner used it during the attack to cut off her clothes. R. 155-56. The trial court found her testimony credible. Because this claim was inadequately pled, defaulted, and meritless, this Court denies relief.

### H.  Claim 8

Petitioner appears to make two arguments in Claim 8:  that Illinois' Truth in Sentencing Law unconstitutionally discriminates against violent offenders by forcing them to serve longer sentences and a higher percentage of their time, and that it conflicts with the policy of returning defendants to society set out in Article 1, Section 11 of the Illinois Constitution.

The claim that the Truth in Sentencing law violates the Illinois Constitution is not a cognizable *habeas* claim.

The federal *habeas* statute only allows relief when a person is in custody "in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Therefore, even if the statute violated the Illinois Constitution, it could not be remedied here.

To the extent that Petitioner claims that the disparate treatment of violent offenders violates the federal Constitution, his claim is meritless. Violent felony offenders are not a protected class under the equal protection clause. *Bottom v.*

*Pataki, No. 9:03-CV-835, 2006 WL 2265408*, at *7 (N.D.N.Y. August 7, 2006). Petitioner has not even attempted to demonstrate that the law has no rational basis. Accordingly, *habeas* relief is denied.

### I. Claim 9

In Claim 9, Petitioner challenges the performance of the counsel appointed to assist him in his post-conviction petition. Respondent is correct, however, that petitioners may not challenge the effectiveness of counsel during state post-conviction collateral proceedings through federal *habeas* claims. *See* 28 U.S.C. § 2254(I). Because the requested relief is specifically barred by the *habeas* statute, Claim 9 is denied.

### J. Claim 10

Petitioner also claims that his due process and Seventh Amendment rights were violated because he was mistakenly led to believe that "all aspects of his trial on appeal would be looked at the same in a bench trial as opposed to trial by jury[.]" Pet. 4. Although Petitioner did endeavor to present this claim in his post-conviction petition, he defaulted by failing to present it on appeal or in his PLA. (As noted above, his explanations for defaulting the claims on appeal lack credibility and cannot satisfy the cause-and-prejudice standard.) In any event, this claim lacks merit.

Petitioner makes no effort to explain the harm he claims to have suffered. Even going back to his post-conviction petition for

relief, he makes only two vaguely related claims. The first is that if there is no difference between a bench and jury trial, his counsel should not have informed the prosecutor that they would proceed without a jury. Resp't Ex. F at Ex. A thereto, at 4. He does not identify any harm he suffered from this customary scheduling measure, however.

As best the Court can tell, Petitioner also complained that the judge initially considered the sperm evidence that she later struck from the record. *See id.* at 17. He contends that a jury hearing such evidence would have entitled him to a mistrial, and thus presumably that the bench trial should similarly have been declared a mistrial. *Id.* at 10. He fails to appreciate, however, that a mistrial would only have entitled him to a second trial at which the improper evidence was not presented. That is essentially what he received when the court excluded the improper sperm evidence but reaffirmed his conviction. A judge is presumed to have relied only on competent evidence in her ruling. *United States v. Stanley,* 411 F.2d 514, 516 (7th Cir. 1969). (A similar presumption applies to limiting instructions in jury trials.) Petitioner has shown no reason why this Court cannot trust that the trial judge relied on competent evidence in re-evaluating the conviction. Accordingly, even liberally construed, Claim 10 does not entitle Petitioner to *habeas* relief.

## K.  Claim 11

Finally, Petitioner argues that a three-year term of mandatory supervised release ("MSR") not imposed by the judge at resentencing has been unconstitutionally added to his sentence.  For the following reasons, this Court agrees.

Respondent contends that this claim was partially defaulted in that Petitioner failed to develop his constitutional argument (as opposed to a general unlawfulness argument) until the PLA following his re-sentencing.  This Court, however, concludes that Petitioner did not procedurally default his MSR claim.

As noted above, Petitioner's counsel filed an *Anders* motion regarding his re-sentencing appeal, but did not address the MSR issue.  Petitioner objected, noting that the MSR issue was meritorious and required the assistance of counsel.  He cited no cases, but objected to "serving a sentence, in custody, which exceeds the judgment of the sentencing court."  After examining the record, the Appellate Court agreed that the appeal was meritless.  Resp't Ex. P, at 6.  It considered and rejected Petitioner's MSR claim on state constitutional terms, noting that the Illinois Supreme Court only requires MSR admonishments to defendants who plead guilty. *Id.*

After that ruling, Petitioner sought rehearing, this time including case support for the unconstitutionality of the MSR term. Among others, he relied on *Earley v. Murray*, 462 F.3d 147 (2d Cir.

2006) and *Hill v. U.S. ex rel Wampler*, 298 U.S. 460 (1936) to show that terms of imprisonment must be set by the sentencing judge. *See* Pet'r Reply Br. Ex. A. *Cf. Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (citation to federal constitutional cases weighs in favor of finding a claim fairly presented to state courts). The Appellate Court denied the petition for rehearing without comment. Pet'r Reply Br. Ex. B.

District courts have reached varying conclusions about whether not raising a claim until a petition for rehearing results in default. *Compare Ambrose v. Evans*, No. 10-CV-172, 2011 WL 5439106, at *2 n.2 (S.D. Ill. July 11, 2011) (finding default) with *U.S. ex rel. Brown v. McCann*, No. 06 C 2730, 2007 WL 2962783, at *6 (N.D. Ill. Oct. 5, 2007) (noting that new arguments are barred from petitions for rehearing, but declining to find default on that ground where the petition was denied without comment.)

On this record, the Court will not find default. Because Petitioner identified the MSR issue in his response to the *Anders* motion, his elaboration of that claim petition for rehearing was arguably permissible under Illinois Supreme Court Rule 367(b), which limits such petitions to points "overlooked or misapprehended." Because Petitioner identified the MSR issue as one requiring the assistance of counsel, and responded with in-depth briefing when his request for counsel was denied, this Court finds that he preserved his claim.

On the merits, this Court can find no mention of an MSR term in either the re-sentencing transcript or the official copy of the judgment and commitment. R. 598-99; Resp't Ex. M. The question is thus whether the Department of Corrections can constitutionally impose an MSR term required by state law but not imposed by the sentencing judge. This Court concludes that it cannot.

In considering an almost identical question under New York law, the Second Circuit found a violation of due process. *Earley v. Murray*, 451 F.3d 71, 75, 76 n.1 (2d Cir. 2006). It further concluded that the unconstitutionality of the later-added MSR term was clearly established by the Supreme Court in the 1936 case *Hill v. United States ex rel. Wampler,* 298 U.S. 460 (1936). In *Wampler*, the Court granted *habeas* where a court clerk, rather than the sentencing judge, added the customary term of confinement that the petitioner be held until he paid fees and costs. *Id.* at 465-66. Justice Cardozo emphasized that only judges have sentencing authority. *Id.* at 465. *See also U.S. ex rel. Chasteen v. Denemark*, 138 F.2d 289, 291 (7th Cir. 1943) ("A commitment depends for its validity on the judgment behind it. If the judgment and sentence do not authorize detention, no mittimus will avail to make detention lawful.")

The Second Circuit recognized, as does this Court, that *Wampler* did not deal with a term of imprisonment *mandated* by state law. *Earley*, 451 F.3d at 74-76. Even so, it concluded that

imprisonment could not exceed that imposed by the judge, and that
*habeas* was appropriate. *Id*. at 77. This Court finds that reasoning
persuasive, and concludes that the imposition of an MSR term by the
Department of Corrections would violate Petitioner's due process
rights. *Cf. People v. Munoz*, --- N.E.2d ---, 2011 WL 6440551, at
*2 (Ill. App. Ct. December 19, 2011) (voiding MSR term in excess of
that imposed by sentencing judge). The Appellate Court's judgment
violated federal law established by *Wampler*, and *habeas* is
appropriate. *See* 28 U.S.C. § 2254(d)(1). Accordingly, a writ will
issue to excise the term of mandatory supervision from Petitioner's
sentence. *Cf. Earley*, 451 F.3d at 77. However, as in *Earley*, this
ruling is not intended to preclude any motion in state court to
lawfully modify Petitioner's sentence to include an MSR term. *Id*.

## IV.  <u>CERTIFICATE OF APPEALABILITY</u>

In order to obtain a certificate of appealability, Petitioner
must make a "substantial showing of the denial of [a]
constitutional right." 28 U.S.C. § 2253(c). He has made such a
"substantial showing" if "reasonable jurists could debate whether
. . . the petition should have been resolved in a different manner
or that the issues presented were adequate to deserve
encouragement to proceed further." *Resendez v. Knight*, 653 F.3d
445, 446 (7th Cir. 2011) (Ripple, J. in chambers) (citation
omitted).

Other than on Claim 11 (on which it granted relief), this Court concludes that Petitioner failed to make a substantial showing that his constitutional rights were denied. Accordingly, it denies a certificate of appealability.

## V. CONCLUSION

For the reasons stated herein, the Court issues a Writ of Habeas Corpus striking the period of MSR from Petitioner's sentence, but declines to issue a writ on all other grounds. A Certificate of Appealability is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** January 19, 2012